<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARTIN MEJIA**, <br><br> Plaintiff, <br><br> v. <br><br> **CMC STEEL US LLC**, <br><br> Defendant. | Civil Action No. 3:22-cv-01681 (ZNQ) (DEA) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant CMC Steel US, LLC d/b/a CMC Steel New Jersey[1] ("Defendant" or "CMC") seeking to dismiss Count One of Plaintiff Martin Mejia's ("Plaintiff" or "Mejia") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) Plaintiff opposed the Motion (ECF No. 13) and Defendant replied (ECF No. 18).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

**I.   <u>BACKGROUND AND PROCEDURAL HISTORY</u>[2]**

This case arises out of Plaintiff's prior employment with CMC from 2005 to 2020. ("Am. Compl." ¶¶ 9, 29, ECF No. 8.) Plaintiff was employed as CMC's Chief Electrician. (*Id.* ¶ 10.)

---

[1] Pled as "CMC Steel New Jersey" in the First Amended Complaint. (ECF No. 8.)
[2] For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the [First Amended Complaint] and draw[s] all inferences from the facts alleged in the light most favorable to [Plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)).

On or about February 25, 2020, Plaintiff injured his left hand in a workplace accident. (*Id.* ¶¶ 12, 30.) Plaintiff suffered severe burns and the loss of one or more layers of skin. (*Id.* ¶ 13.) Immediately after the accident, Plaintiff reported his injury to his manager at CMC. (*Id.* ¶ 16.) Plaintiff had requested that a CMC safety manager call an ambulance to take him to the hospital, but the manager refused because it would be "too expensive." (*Id.* ¶¶ 23, 24.) Plaintiff called his own ambulance. (*Id.* ¶ 24.)

While Plaintiff was at the hospital following his injury, Plaintiff's manager instructed Plaintiff to send a photograph of his injured hand. (*Id.* ¶ 17.) After Plaintiff sent his manager the photograph, his manager then forwarded the photograph to other CMC employees and the photograph was incorporated into a CMC safety presentation without Plaintiff's consent. (*Id.* ¶¶ 18-20.) Plaintiff also submitted a claim for workers' compensation in connection with his injuries. (*Id.* ¶ 15.)

Sometime after the accident, Plaintiff started receiving comments from his coworkers that Defendant was going to terminate Plaintiff "to make an example of him and his injuries" due to the number of workplace injuries that had occurred at CMC's New Jersey location. (*Id.* ¶ 25.) Three days after Plaintiff's injury, Plaintiff returned to work to meet with CMC management to discuss the accident. (*Id.* ¶ 26.) During that meeting, Plaintiff explained the nature of his injuries and that his doctor said he needed time off from work to recover. Plaintiff's request for time off was not challenged by CMC management. (*Id.* ¶ 28.)

On or about March 5, 2020, Plaintiff received a phone call from a CMC human resources manager notifying him that he had been terminated. (*Id.* ¶ 29.) After Plaintiff's termination, Defendant then offered to rehire Plaintiff if Plaintiff took "complete blame for his injuries and the resulting disabilities." (*Id.* ¶ 34.) Plaintiff refused and alleged that his injuries resulted because the equipment Plaintiff was working on was not properly serviced and not in safe working

condition. (*Id.* ¶¶ 30, 35). Prior to his injury in February 2020, Plaintiff had reported "numerous unsafe working conditions." (*Id.* ¶ 31.)

Thereafter, Plaintiff commenced this action in the Superior Court of New Jersey on February 24, 2022, which was removed by Defendant to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1.) Plaintiff amended his complaint, asserting in the First Amended Complaint three claims under the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-12 *et seq.* (the "NJLAD") (Count One), and the New Jersey Workers Compensation Act, N.J.S.A. §§ 34:15-1-34:15-6) (the "NJWCA") (Count Two). (ECF No. 8.) Plaintiff also brings a claim for aiding and abetting violations of the NJLAD and NJWCA. (Count Three.) Defendant moves to dismiss Count One of the First Amended Complaint. (ECF No. 12.)

## II.  JURISDICTION

Given the diversity of the parties and the amount in controversy, the Court has jurisdiction over this case under 28 U.S.C. § 1332.[3]

## III.  LEGAL STANDARD

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S.Ct. 2932 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be

---

[3] In response to the Court's request, Defendant recently clarified its citizenship in an affidavit submitted by its counsel. (ECF No. 20.)

3

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S.Ct. 2932 (citations omitted).

While generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are integral to or explicitly relied upon in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

## IV. DISCUSSION

The NJLAD prohibits employment discrimination on the basis of a disability. N.J.S.A. §§ 10:5-4.1-29.1; *see also Victor v. State*, 401 N.J. Super. 596, 609 (App. Div. 2008), *aff'd as modified*, 203 N.J. 383 (2010). The elements of an employment discrimination claim under the NJLAD vary depending upon the particular cause of action alleged. *Victor*, 203 N.J. at 408.

In Count One of the Amended Complaint, Plaintiff asserts several causes of action for discrimination based on disability. Specifically, Plaintiff alleges that Defendant discriminated against him through (1) termination of his employment and failure to rehire due to disability, (2) failure to accommodate and engage in the interactive process, (3) and retaliation against Plaintiff because of his disability and for requesting reasonable accommodation. (Am. Compl. ¶¶ 38-44.) Defendant moves to dismiss each of the claims set forth in Count One, arguing that each one fails to state a claim under the NJLAD. The Court examines each in turn.

### A. DISCRIMINATORY DISCHARGE UNDER NJLAD

The Court first considers Plaintiff's claim that Defendant terminated Plaintiff due to his disability or perceived disability.

To establish a prima facie case of discriminatory discharge due to a disability, an employee must allege that: (1) the employee is a member of a protected class (*i.e.*, that he had a disability or a perceived disability); (2) the employee was otherwise qualified and performing the essential

functions of the job; (3) the employee was terminated; and (4) the employer thereafter sought similarly qualified individuals for the job who were not members of the employee's protected class. *Joseph v. New Jersey Transit Rail Operations Inc.*, 586 F. App'x 890, 892 (3d Cir. 2014) (citing *Victor*, 203 N.J. at 409).

Here, the First Amended Complaint alleges that Plaintiff suffered injuries to his left hand, including "severe burns and the loss of one or more layers of skin." (Am. Compl. ¶ 13.) It also alleges that Plaintiff was terminated in March 2020. (*Id.* ¶ 29.) Such factual allegations are sufficient to plead the first and third elements with respect to whether Plaintiff had a disability[4] and whether Plaintiff was terminated by Defendant. Plaintiff, however, has failed to plead sufficient facts to support the second and fourth elements of the prima facie case for disability discrimination in violation of the NJLAD. With respect to the second element, Plaintiff only asserts a conclusory statement that "Plaintiff was qualified for every position he held and he performed his job well." (Am. Compl. ¶ 11.) This allegation, on its own, is insufficient to establish that Plaintiff was otherwise qualified and performing the essential functions of his job. *See Taylor v. Lincare, Inc.*, 2016 U.S. Dist. LEXIS 91924, at *11 (D.N.J. July 15, 2016).

As a separate matter, the First Amended Complaint pleads no facts that suggest Plaintiff was terminated under circumstances that give rise to an inference of unlawful discrimination. *See id.*, at *4. Indeed, Plaintiff fails to demonstrate a causal connection between his disability and his subsequent termination. For instance, Plaintiff fails to allege any facts regarding whether

---

[4] The NJLAD defines "disability" as a "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury . . . which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination . . . physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device. . . ." N.J.S.A. § 10:5-5(q). In the First Amended Complaint, the basis for Plaintiff's alleged disability is the injuries to his left hand. (Am. Compl. ¶ 13.) Plaintiff also alleges that his hand injuries interfered with one of more major life activities, including working, lifting, grasping and holding objects, and operating tools or machinery. (*Id.* ¶ 14.) However, not all physical injuries rise to a level of being disabled under New Jersey law. *See Concepcion v. Silver Line Bldg. Prods.*, No. 21-17920, 2022 U.S. Dist. LEXIS 96571, at *8 n.5 (D.N.J. May 31, 2022). For the purpose of deciding the current motion, the Court assumes Plaintiff's injuries as pled are sufficient to demonstrate disability under the NJLAD. *See id*. In its briefing, Defendant does not dispute that Plaintiff's hand injury rises to the level of a disability under the NJLAD. ("Def. Br." 6, ECF No. 12-1.)

6

Defendant sought to hire anyone to replace him, let alone that it sought similarly qualified individuals who were not disabled specifically. *See Concepcion*, 2022 U.S. Dist. LEXIS 96571, at *9.

Given these deficiencies, the Court finds that Count I does not plead a plausible claim for discriminatory discharge.

### B. FAILURE TO ACCOMMODATE UNDER THE NJLAD

Next, the Court turns to Plaintiff's claim that Defendant failed to give Plaintiff a reasonable accommodation due to his alleged disability.

Under the NJLAD, an employer must "make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." N.J. ADMIN. CODE § 13:13-2.5. To prevail on a failure to accommodate claim, an employee must plead two sets of elements. First, he must plead the following prima facie elements required in any disability discrimination claim: (1) the employee was disabled within the meaning of the statute; (2) the employee was qualified to perform the essential functions of the position of employment; and (3) the employee suffered an adverse employment action because of the disability. *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 235-36 (D.N.J. 2015); *see also Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 535 (D.N.J. 2008). Second, to satisfy the second prong of the prima facie test, an employee asserting failure to accommodate must also allege that: (1) his employer knew of his disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer made no good faith effort to assist the employee in seeking accommodations; and (4) that the employee could have been reasonably accommodated but for the employer's lack of good faith. *Tynan v. Vicinage 13 of Super. Ct.*, 351 N.J. Super. 385, 400-01 (App. Div. 2002); *see also Victor*, 203 N.J. at 416 (stating that the elements of the failure to accommodate claim appear

7

as a subset of the second prong of the ordinary prima facie case); *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006). To determine what appropriate accommodation is necessary, the employer must engage in an interactive process with the employee that identifies potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability. *Tynan*, 351 N.J. Super. at 400 (citing 29 C.F.R. § 1630.2(0)(3)).

The same flaws the Court identified in Plaintiff's discriminatory discharge claim also undermine Plaintiff's failure-to accommodate claim. Further, the Court also finds that Plaintiff fails to sufficiently plead the additional necessary elements to sustain his failure-to-accommodate claim. Plaintiff does not allege any facts associated with Defendant's failure to make a good faith effort to assist Plaintiff, or whether Defendant could have even reasonably accommodated Plaintiff's alleged disability. The only accommodation identified in the First Amended Complaint is time off from work. Plaintiff alleges that "[a]ny reasonable manager or supervisor . . . knew or should have known that Plaintiff would require reasonable accommodations due to his injuries, the most obvious which would include the need for time off from work. (Am. Compl. ¶ 21.) Plaintiff alleges that he requested time off to recover from his injuries during a meeting with CMC managerial employees. (*Id.* ¶¶ 26, 27.) Notably, Plaintiff's own allegations state that Defendant did not challenge Plaintiff's request for time off at any time prior to his termination. (*Id.* ¶ 28.) This was therefore not a failure to accommodate, and no other accommodations are mentioned in the First Amended Complaint. Accordingly, the Court finds that Plaintiff fails to state a claim for disability discrimination based on failure to accommodate.

    **C.    UNLAWFUL RETALIATION UNDER THE NJLAD**

Finally, the Court turns to Plaintiff's claim for retaliation. The NJLAD makes it unlawful "[f]or any person to take reprisals against [another] person because that person has opposed any

practices or acts forbidden under [the NJLAD] . . . ." N.J.S.A. § 10:5-12(d).  To set forth a prima facie case of unlawful retaliation under the NJLAD, an employee must show that: (1) the employee was in a protected class; (2) the employee engaged in a protected activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See Victor*, 203 N.J. at 409; *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001).

Here, Plaintiff alleges Defendant retaliated against him due to his disability by terminating his employment and refusing to rehire him.  Plaintiff also alleges that Defendant retaliated against him because he filed a workers' compensation claim and because he requested a reasonable accommodation for his disability.  (Am. Compl. ¶¶ 37, 39.)  As noted above however, the Amended Complaint is devoid of factual allegations to support Plaintiff's conclusory statements that Defendant terminated him in retaliation for filing a workers' compensation claim or for requesting time off work.  Plaintiff has not alleged sufficient facts that suggest a causal connection between his filing for workers' compensation or requesting time off due to his disability, and Defendant's decision to terminate his employment.  *See Mitchell v. C&S Wholesale Grocers, Inc.*, No. 10-2354, 2010 U.S. Dist. LEXIS 68269, at *22 (D.N.J. July 8, 2010).  Therefore, his NJLAD retaliation claim will also be dismissed without prejudice.

In sum, the Court finds that Plaintiff has failed to plead any plausible NJLAD claim and accordingly, will dismiss Count One of the First Amended Complaint, in its entirety, without prejudice.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss will be GRANTED. Count One of the First Amended Complaint will be DISMISSED WITHOUT PREJUDICE. An appropriate Order will follow.

Date: **May 12, 2023**

/s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**